UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA MARIE FISHEL,

    Plaintiff,

v.

    Case No. 1:15-cv-1271
    Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff alleged a disability onset date of January 1, 2012. PageID.191. Plaintiff identified her disabling conditions as learning disabled, depression, insomnia, anxiety and emotional problems. PageID.195. She completed high school and had previous employment as a housekeeper in a motel and a recreational aide in a senior citizen home. PageID.196. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on August 7, 2014. PageID.37-46. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C.

§405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe

impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of May 24, 2012. PageID.39. At the second step, the ALJ found that plaintiff had severe impairments of a learning disability, borderline intellectual functioning, depression, and an anxiety disorder. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.41.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: work must be limited to simple, routine and repetitive tasks in a work environment free of fast paced production requirements involving only simple work-related decisions and routine workplace changes. The claimant is likely to be off task 8% of the work period.

PageID.43. The ALJ also found that plaintiff had no past relevant work. PageID.45.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the national economy. PageID.45-46. Specifically, the ALJ found that plaintiff could perform the unskilled work in the region (Michigan) such as: medium dishwasher (8,600 jobs); light packaging (1,700 jobs); and light assembly (4,400 jobs). PageID.46. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since May 24, 2012, the date the application for SSI was filed. *Id*.

## III. DISCUSSION

Plaintiff raised two issues on appeal:

4

> A.   Whether the Commissioner erred in failing to obtain or attempt to obtain plaintiff's prior disability file.

Plaintiff contends that the ALJ committed error by failing to obtain a copy of her previous award of SSI benefits in 1993. The gist of plaintiff's claim is that "the prior file is extremely relevant due to the listing of 12.05 to determine whether claimant had an IQ of 70 or below that can be established prior to her 22nd birthday." Plaintiff's Brief (docket no. 13, PageID.497). A disability report in the present case indicates that plaintiff was found disabled on June 1, 1993, and benefits terminated in May 2008. PageID.192. Plaintiff contends that benefits were terminated because she was financially disqualified due to a marriage in May 2008 and that this prior claim file is highly relevant to her current claim. PageID.497. Defendant points out that this file no longer exists, noting that the code on the disability report ("L47") indicates that the file has been destroyed per agency protocol. PageID.192, 507. *See* POMS (Programs Operations Manual System) DI 11005.05 (explaining that code "L47 = destroyed").[1] In short, there was no file which the ALJ could retrieve. It is unclear whether counsel requested the file from the ALJ; a letter in the record indicates that he requested it from the Appeals Council after the ALJ's unfavorable decision. PageID.269-271. Because the file is destroyed, plaintiff's claim of error is denied as moot to the extent she seeks a copy of it.

However, plaintiff includes a related claim. In her pre-hearing memorandum, plaintiff points out that she was awarded SSI benefits as a child, that the benefits continued into adulthood, that she was financially disqualified from receiving SSI benefits upon her marriage, is now divorced,

---

[1] POMS is a policy and procedure manual that is used in evaluating Social Security claims. *Davis v. Secretary of Health & Human Services*, 867 F.2d 336, 340 (6th Cir. 1989).

and asked to reinstate the previous SSI benefits. PageID.262-263. As discussed, the previous award of benefits was documented in her record. Counsel pointed out that plaintiff attended special education classes as a child, lives with her parents, does not have a driver's license (having failed the driving test on four occasions), and has never held full-time employment. PageID.262-263. At the administrative hearing, plaintiff testified that she failed to get a driver's license, that she cannot cook without burning things, that most of her classes in high school were special education classes, that she could not care for her child without her parents' help, that she never lived by herself, that she received SSI until she was married, and that she was divorced in October 2012. PageID.59, 67. The issue of plaintiff's IQ score was also discussed at the hearing. When plaintiff's counsel stated that they did not have an "actual exam" other than her primary treater's estimate that it was between 60 and 70, and that the school no longer had records, the ALJ stated "I'd be curious to know what that is." PageID.69. At the close of the hearing, counsel argued that plaintiff was seeking reinstatement of her previously awarded SSI benefits, which had ceased due to economic ineligibility.

The ALJ's decision did not address the fact that plaintiff had been previously found disabled, received SSI benefits for about 15 years, and that those benefits were terminated due to economic ineligibility (as opposed to medical improvement). "The existence of a prior established disability is highly relevant when the nature of that disability appears to be the very same cause of the alleged disability then under examination." *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). In this regard, the ALJ's statement that "there is no indication in the objective medical evidence of record that the claimant had any significant deficits in adaptive functioning prior to the attainment of age 22" appears inconsistent with the fact that plaintiff was deemed disabled and eligible for SSI

when she was an eleven-year-old child. Finally, while the record reflects that plaintiff underwent a consultative psychological evaluation by an agency psychologist after the hearing, PageID.37, 40, 477-485, this did not include an IQ test (even though the unresolved issue of plaintiff's IQ was discussed at the hearing). Given this record, the ALJ's decision is not supported by substantial evidence because it failed to acknowledge plaintiff's prior established disability. In reaching this determination, the undersigned is aware that the records from plaintiff's 1993 disability determination were destroyed. Nevertheless, the ALJ was on notice that the agency had previously found plaintiff disabled and could have taken some steps to inquire about the basis for the prior award of SSI benefits, which were not terminated due to medical improvement. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate plaintiff's claims taking into account her prior established disability.

> **B.    Whether the Commissioner erred in failing to assign controlling weight to plaintiff's treating primary care physician, Dr. Paul Wagner, D.O.**

Next, plaintiff contends that the ALJ failed to properly evaluate Dr. Wagner as her treating physician. The ALJ addressed Dr. Wagner's opinion as follows:

> The record contains a series of medical records from Hart Family Medical Center covering the timeframe from June 2012 to June 2013 (Exhibit B4 F). Similar to above, the claimant was treated for a variety of minor physical ailments such as upper respiratory infections, obesity, ankle/foot pain, chest wall pain, a menstrual disorder NOS, vaginitis, and a left shoulder sprain with a fairly unremarkable MRI. Again, these physical problems were either mild in severity and/or were reasonably well controlled. They do not cause the claimant any significant functional limitations. In view of these considerations, and as reflected above, the claimant is not found to have any severe physical impairment herein.

> More recent medical records from Hart Family Medical Center covering the timeframe from July 2013 to February 2014 show ongoing treatment for depression in addition to treatment for an anxiety state (Exhibits B5F; B6F). As of February 3, 2014, it was reported that the claimant's anxiety and depression remained stable, and that she was having no complications noted from the medication presently being used (Exhibit B6F, p.2).
>
> On February 5, 2014, Dr. Wagner completed a mental medical source statement regarding the claimant's work-related abilities (Exhibit B7F). He reported to the effect that the claimant has fair to poor ability to function in many work-related areas. He estimated that the claimant has a borderline intellect with an IQ between 60 and 70.
>
> \* \* \*
>
> The undersigned is placing very little to no weight on the mental medical source statement completed by Dr. Wagner on February 5, 2014 as discussed above (Exhibit B7F). The limitations placed on the claimant by Dr. Wagner appear to be considerably over restrictive and are not well supported objectively. Dr. Wagner merely *estimates* that the claimant has a borderline intellect with an IQ ranging from 60-70. No formal intelligence testing (such as the Wechsler series) has been administered to the claimant, and there are no school records showing severely diminished IQ or even confirming placement in special education. Moreover, there is no evidence that Dr. Wagner is a treating source physician or how long the claimant has treated with this doctor.

PageID.45 (emphasis in original).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ violated the regulations by erroneously stating that Dr. Wagner was not a treating source. PageID.499-500. While plaintiff states that "Dr. Wagner has known claimant her entire life," PageID.499, she cites no evidence to support this claim. Nevertheless, the records reflect that Dr. Wagner treated plaintiff for at least a year during the relevant time period (i.e., after the alleged disability onset date of January 1, 2012). Dr Wagner's name appears as plaintiff's physician on various forms from as early as November 11, 2012. *See* PageID.322, 337, 342, 346, 360, 362, 367, 369, 370, 371, 387, 419-421, 447-449, 456-457, 459-462. Dr. Wagner also adjusted plaintiff's

medications on at least two occasions, PageID.420, 457, 460, and prescribed counseling for anxiety and depression on November 4, 2013, PageID.462.

Defendant acknowledges that "the ALJ might have erred in concluding that Dr. Wagner was not a treating source." Defendant's Brief (docket no. 14, PageID.507). However, defendant implies that this was harmless error because the doctor's opinion was not well-supported objectively and only estimated plaintiff's IQ score. *Id*.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the

9

opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

In evaluating medical opinions, "[t]he source of the opinion . . . dictates the process by which the Commissioner accords it weight." *Gayheart,* 710 F.3d at 376. "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376. *See* 20 C.F.R. § 416.927(c)(2)-(6).

Here, the ALJ failed to give good reasons for the weight assigned to Dr. Wagner's opinion because he did not classify Dr. Wagner as a treating physician. The ALJ's failure to address the extent of the doctor's treatment relationship with plaintiff runs contrary to the regulatory scheme for evaluating medical opinions. Defendant has not persuaded the undersigned that this fundamental mis-characterization of the Dr. Wagner is harmless error. *See Wilson*, 378 F.3d at 545-46 (the ALJ's failure to give "good reasons" for not crediting a treating physician's opinion does not constitute harmless error). Furthermore, given that the agency destroyed plaintiff's previous file and that the ALJ did not order a post-hearing IQ test, Dr. Wagner's IQ estimate is the only evidence on record.

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Wagner's opinion.

### IV.  CONCLUSION

Accordingly, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner is directed to (1) re-evaluate plaintiff's claims taking into account her prior established disability, and (2) re-evaluate Dr. Wagner's opinion.  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 27, 2017                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge